## STATE *vs.* DANIEL M. GOSS.

### Androscoggin.   Opinion December 30, 1878.

*Officer—de facto. Indictment—form of. Larceny. Embezzlement. Words. Officer.*

An officer *de facto* is punishable for malfeasance in office, the same as an officer *de jure.*

A *de facto* collector of taxes is punishable for the embezzlement of money which comes into his possession by virtue of his office, the same as if his election or appointment was in all respects legal and formal.

An indictment which avers that the accused, "being a public officer, to wit: The collector of taxes of the town of M," did embezzle, etc., sufficiently describes the official character of the accused, without stating how he came into the office, or that he was duly qualified to act by taking the oath and giving the bond required by law.

The term "officer" is generic, and when used in a statute, and there is nothing in the context, or in reason, or authority, to indicate that it is used in a different sense, may properly be held to include all classes of officers —officers *de facto* as well as officers *de jure.*

The revised statutes of Maine (c. 120, § 7), declare that, if a "public officer" embezzles, etc., he shall be deemed guilty of larceny, and punished accordingly. *Held,* that the term "public officer" includes officers *de facto* as well as officers *de jure.*

Form of indictment held good on demurrer.   See statement of the case.

ON EXCEPTIONS.

INDICTMENT, "that Daniel M. Goss, of Minot, in the county of Androscoggin aforesaid, on the first day of April, in the year of our Lord one thousand eight hundred and seventy-four, at Minot aforesaid, in the county of Androscoggin aforesaid, then and there being a public officer, to wit: The collector of taxes of the town of Minot aforesaid, did by virtue of his said office and whilst he was employed in said office have, receive and have in his possession and under his control certain money to a large amount, to wit: To the amount of fifteen hundred dollars, and of the value of fifteen hundred dollars, of the property of the inhabitants of the town of Minot aforesaid, and then and there the money aforesaid did unlawfully embezzle and fraudulently convert to his own use; and so the jurors aforesaid, upon their oaths aforesaid, do say that the said Daniel M. Goss in manner and form aforesaid the aforesaid money of the property of the inhabitants of the town of Minot

aforesaid, feloniously did steal, take and carry away, against the peace of said state, and contrary to the form of the statute in such case made and provided."

There was also a second count similar in form to the first, stating the time as January 9, 1874, and the sum as $2,200, and closing as follows: " And which said money did come into his possession and under his control by virtue of his said office, and of his employment as a public officer as aforesaid of the town of Minot; and then and there the money aforesaid did unlawfully and fraudulently embezzle, and unlawfully and fraudulently convert to his own use ; and so the jurors aforesaid, upon their oaths aforesaid, do say that the said Daniel M. Goss in manner and form aforesaid, the money aforesaid, feloniously did steal, take and carry away, against the peace of said state, and contrary to the form of the statute in such case made and provided."

To this indictment, the defendant's counsel demurred specially, " because it " was " not alleged in said indictment that the said Goss was duly chosen a collector of taxes of the town of Minot, by a major vote of the qualified voters of said town, at a meeting thereof held in the month of March," and for other causes set out with similar fullness, in substance that it was not alleged that he was appointed collector, or received a warrant, or gave bond, or took the oath, or was duly qualified.

The presiding justice overruled the demurrer, and leave being granted to plead over, the defendant pleaded not guilty. Upon the trial, the state introduced the record of the town of Minot to prove the election and qualification of the respondent as collector of taxes, of which the following is all that is essential : " March meeting, 1873. To the inhabitants of the town of Minot. Greeting : In the name of the state of Maine, we hereby notify and warn the inhabitants of the town of Minot, qualified to vote in town affairs, to assemble at the hall of John D. Curtis in said town, on the tenth day of March inst., at ten o'clock in the forenoon, to act on the following articles, to wit : 4th. To choose all necessary town officers for the ensuing year. Given under our hands this 1st day of March, A. D. 1873. Wm. Lowell, S. J. M. Perkins, E. L. Bailey, selectmen of Minot.

" Return. Minot, March 10th, 1873. By standing vote of the town, we have notified and warned the inhabitants of said town, qualified to vote in town affairs, to assemble at the time and place and for the purposes therein mentioned, by posting up copies of said warrant at the post offices at Minot, West Minot, and Mechanic Falls, being public and conspicuous places in said town, on the 1st day of March inst., being seven days before the meeting. Wm. Lowell, S. J. M. Perkins, E. L. Bailey, selectmen of Minot.

" At a legal meeting of the inhabitants of the town of Minot, qualified to vote in town affairs, holden at the hall of John D. Curtis, in said town, on the 10th day of March, in the year of our Lord one thousand eight hundred and seventy-three, at ten o'clock in the forenoon, the following votes were passed : Voted to take from the table the election of collector of taxes and constable, and D. M. Goss was chosen, by ballot, collector of taxes of the town of Minot, and constable for the ensuing year. Androscoggin, ss. April 9, 1873. Personally appeared Daniel M. Goss and took the oath necessary to qualify him to serve as collector of taxes for the town of Minot for the ensuing year according to law. Before me, Gideon Bearce, town clerk."

No other record evidence relating to the appointment and qualification of the respondent was introduced.

No evidence was introduced to show that the town of Minot had appointed a different mode for warning its meetings from that prescribed by statute.

The state introduced the official bond of the respondent as collector of taxes of the town of Minot for the year 1873, also the warrant from the assessors to D. M. Goss as collector of taxes for 1873. There was evidence showing that the defendant had acted as collector of taxes for the year 1873.

The defendant requested the following instructions : I. That if the town of Minot has appointed by vote in legal meeting a different mode of notifying its meetings from that prescribed by statute, it is incumbent upon the government to show that the meeting of March 10th, 1873, was called in accordance with the mode appointed by said town.

II. That the return of the selectmen, upon the back of said warrant, is not evidence to show that said meeting was called in accordance with the mode appointed by said town.

III. That in the absence of proof that the town has appointed a " different mode," it will be presumed that the town has not appointed a " different mode."

IV. That the warrant and return of the Minot town meeting of March 10, 1873, was not in accordance with the statutory regulations, and do not show that meeting to be legal.

V. That whether the town of Minot has appointed a different mode of warning town meetings from that prescribed by statute or not, the warrant should have been directed to some constable of the town of Minot, or some individual by name, and that, not being so directed, the meeting was illegal.

VI. That the provision in R. S., c. 3, § 7, that towns may by vote in legal meeting, appoint a different mode, &c., does not refer back to § 6 of said chapter, stating to whom warrants may be directed; but only to the method by which such constable or individual shall notify such meetings.

VII. That, in order to make said meeting a legal one, the return on the warrant must show that an attested copy, &c., was posted, &c., and the return not showing the same, the meeting must be held illegal.

VIII. That a warrant directed to the " Inhabitants of the town of Minot," and signed by the selectmen of Minot, is not a legal warrant, and is void; and that the statute confers no authority upon the selectmen, as such, to warn a town meeting by a warrant over their hands, even if the town by vote, &c., appoint such a mode.

IX. That if the town of Minot had appointed a "different mode" to warn meetings from the one prescribed by statute, the government must show affirmatively what that " different mode " was, and that the meeting of March 10, 1873, was warned in accordance with such mode.

X. That the return upon the warrant must show what the mode appointed by the town was, and that its requirements have been particularly observed.

XI. That in order to convict this respondent upon the criminal charge of having embezzled, &c., the money of the town of Minot, in his possession or under his control by virtue of his office of collector of taxes of said town, (he being alleged to be collector of taxes) the government must show affirmatively that the respondent was legally appointed or chosen to the said office; and if chosen that it was at a March meeting of said town, in all respects, legally warned, notified and held.

All of which requested instructions the presiding justice declined to give. The verdict was guilty; and the defendant alleged exceptions.

*A. R. Savage,* of the firm of Hutchinson, Savage and Hale, closed an exhaustive argument, as follows: We say that this offense is one created by statute, which is to be interpreted strictly; that the offense as charged is one which can be committed only by a public officer; that the statute knows no public officer *de facto;* it presumes all the officers created by it to be officers *de jure;* that this respondent was either a public officer, or he was not; that there is no half way ground upon which the respondent can be placed, and still be liable as a public officer; that the respondent is not estopped from showing that he was not a public officer; and that being indicted upon a statute as a public officer, the indictment must state all the facts and circumstances which constitute the statutory offense; and upon the trial, the proof as well as the allegations must bring the case strictly within the statute. *Wood* v. *People,* 53 N. Y. 511. *Commonwealth* v. *Rupp,* 9 Watts, 115.

*W. H. White,* county attorney, for the state, said that he drew the indictment against a public officer under the statute and had followed the terms of the statute and the precedents; that it was sufficient that he was an officer *de facto;* that whether this was so or not, the indictment was good; that the evidence showed him an officer *de jure* as well as *de facto;* that assuming the meeting was legal, he was chosen by ballot, sworn, gave the necessary bond and received the assessor's warrant. To the point that there was no proof of an election, at a meeting duly called, because

there was no proof that the selectmen were authorized to serve and return the warrant, he replied there was no proof to the contrary; the presumption was that all things were correctly done according to R. S., c. 3, § 7. He stated, as matter of fact, that the town of Minot appointed that mode of calling its meetings more than twenty years ago, and so far as its records show, its meetings have been uniformly called in this mode down to the present time.

WALTON, J. This is an indictment against a collector of taxes for embezzlement. Two questions are presented; one, whether the indictment is sufficient; the other, whether an officer *de facto* is punishable for embezzlement, the same as an officer *de jure.*

The only objection made to the indictment is, that it does not allege that the defendant was duly elected or appointed a collector of taxes ; or that he was duly qualified as such. The indictment avers that he was a "public officer, to wit: The collector of taxes of the town of Minot." And that, by virtue of his office, he received and had in his possession money, which he embezzled, etc. It is claimed that this is not sufficient ; that it should be averred how he came into the office, and that he was duly qualified to act as collector, by taking the oath and giving the bond required by law. We think the indictment is sufficient as it is. It is conformable to approved precedents, and is the same in form as the one in *State* v. *Walton,* 62 Maine, 106. 1 Whar. Prec. Indictments, form 460. 2 Arch. Crim. Law, 1362-3.

The next question is whether an officer *de facto* is punishable for embezzlement the same as an officer *de jure.* The question arises in this way : The warrant for the town meeting at which the defendant was elected was posted by the selectmen, (not a constable) and they state in their return that they did so by virtue of a "standing vote of the town ;" but the standing vote was not produced and read in evidence at the trial ; and it is claimed that for this reason the town meeting does not appear to have been legally called ; that the defendant does not appear to have been legally elected ; that he must, therefore, be regarded as no more than an officer *de facto;* and that an officer *de facto* is not punishable for embezzlement. Passing over the question of the legal-

ity of the defendant's election, we come to the question whether an officer *de facto* is liable for embezzlement, the same as an officer *de jure.*

We think he is. The statute, which provides for the punishment of embezzlement, declares that, if a "public officer" embezzles, etc., he shall be deemed guilty of larceny, and be punished accordingly. R. S., c. 120, § 7.

The word "officer" is defined in Webster's Dictionary as "one who holds an office; a person lawfully invested with an office," etc. The latter branch of this definition would seem to embrace only officers *de jure;* but the first is clearly comprehensive enough to include officers *de facto.* "One who holds an office." An officer *de facto* as clearly holds an office as an officer *de jure.* The term "officer" is generic, and when used in a statute, and there is nothing in the context, or in reason, or authority, to indicate that it is used in a different sense, we think it should be held to include all classes of officers—officers *de facto* as well as officers *de jure.* There is nothing in the context of the statute cited to indicate that the word was used in a different sense. And, surely, no good reason can be given why an officer *de facto* should not be punished for embezzlement as well as an officer *de jure.* The moral wrong, the wickedness of the act, must be as great in the one as in the other; and if we punish the latter and allow the former to escape, we make it an object for men to obtain office by illegal rather than legal means; thus encouraging instead of repressing illegalities. Nor are we aware of any authority for such a distinction. It is said by Hawkins (and he has always been held as a very reliable authority) that an officer *de facto* is punishable the same as an officer *de jure,* "for that the crime is in both cases of the very same ill consequence to the public, and there seems to be no reason that a wrongful officer should have greater favor than a rightful officer, and that for no other reason but because he is a wrongful one." 3 Hawk. P. C. c. 19, §§ 23, 28.

And the law is so laid down by other text writers. 1 Arch. C. L. 413-4. Roscoe's Crim. Ev. 6. 1 Bishop's C. L. § 416. 2 Bishop's C. L. § 392.

And in the adjudged cases. *State* v. *Maberry*, 3 Strobh. 144. *State* v. *Sellers*, 7 Rich. 368. *Diggs* v. *State*, 49 Alabama, 311.

*Exceptions overruled.*

APPLETON, C. J., BARROWS, VIRGIN and LIBBEY, JJ., concurred.