## UNITED STATES v. HIRSCH.

(District Court, E. D. New York. November 11, 1918.)

ARMY AND NAVY ⬡═36—OFFENSES BY PERSONS IN MILITARY SERVICE—JU-
RISDICTION OF CIVIL COURTS.

Articles of War enacted August 29, 1916 (Comp. St. 1916, § 2308a), do
not deprive the civil courts, either in time of peace or war, of the con-
current jurisdiction previously vested in them over crimes against either
federal or state law, committed within the United States, by persons sub-
ject to military law.

Criminal prosecution by the United States against Harry Jean Hirsch
and 17 others. On plea to the jurisdiction by defendant Hirsch. Over-
ruled.

Melville J. France, U. S. Atty., of Brooklyn, and H. Harvey Har-
wood, Asst. U. S. Atty., of New York City.

Stephen C. Baldwin, of New York City, for defendant.

CHATFIELD, District Judge. Under a plea denying jurisdiction
to the court, motion is made by Harry J. Hirsch, one of the defend-
ants (18 in number) in the above-entitled action, to dismiss the indict-
ment as against him, and for an order directing his release, and that
all charges relating to the matters set forth in the indictment be left
exclusively, so far as he is concerned, to the military forces of the Unit-
ed States for hearing before a military court, under the present Arti-
cles of War.

The indictment charges a conspiracy to defraud the United States,
between July 15, 1916, and September 19, 1918, and the commission of
overt acts, attributed to each of the defendants, between August, 1916,
and August, 1918.

The defendant making the motion is a colonel of the Regular Army
detailed to the Quartermaster's Corps. His present application is based
upon the language of the Articles of War, adopted by the act of Con-
gress of August 29, 1916, and contained in the Army Appropriation
Bill of that date (39 Statutes at Large, chapter 418, at page 650 [Comp.
St. 1916, § 2308a]).

This new codification "shall at all times and in all places govern the
armies of the United States," and took the place of old section 1342
of the Revised Statutes, which was repealed, in so far as inconsistent
with the new law. But it especially provides that all offenses commit-
ted prior to August 29, 1916, shall be governed by the law as it stood
before that date; that is, by old section 1342 of the Revised Statutes.

It would therefore follow that some of the acts of conspiracy al-
leged in the indictment might prove to have occurred before August
29, 1916, and would be considered under the provisions of former sec-
tion 1342, while the new articles would be in force as to matters oc-
curring after that date.

But if the indictment will lie against the defendant Hirsch, under
the new section 1342, its validity would not be affected by the amend-

ment of 1916, for it might include any act within three years prior to the filing of the indictment. On the other hand, if the defendant Hirsch's contention is correct, further consideration would be required, in order to determine whether any part of the alleged conspiracy, or the commission of overt acts, antedated August 29, 1916.

Passing to a consideration of the point really presented, we find that under the previous Articles of War concurrent jurisdiction was given to the civil courts and to courts-martial to deal with any offender who happened to be at the time within the court's jurisdiction. Under this law both courts-martial and civil courts necessarily respected the jurisdiction which was being exercised by the other, and the court first apprehending the defendant was thus able to proceed with a trial, without reference to the concurrent jurisdiction of the other. In the same way double jeopardy was avoided. Each statute was therefore valid, and constitutional rights were entirely preserved.

This construction was upheld in the cases of Dynes v. Hoover, 61 U. S. 65, 15 L. Ed. 838, Coleman v. Tennessee, 97 U. S. 509, 24 L. Ed. 1118, Grafton v. United States, 206 U. S. 333, 27 Sup. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640, and Franklin v. United States, 216 U. S. 559, 30 Sup. Ct. 434, 54 L. Ed. 615.

The new Articles of War embodied many paragraphs worded in exactly the same way as those previously in force, but new sections have been added, and some sections have been so changed as to require construction by the courts with reference to the matters considered in the cases above cited.

The general paragraph conferring jurisdiction read:

"The armies of the United States shall be governed by the following rules and articles."

To this has been added the words "at all times and in all places." This change was evidently inserted to cover the needs of the army when on foreign soil (as, for instance, in Mexico), and to avoid the possible contention that the "armies of the United States" included only the forces of the United States within its borders. But the defendant here claims that the intent of the provision is to exclude, even within the United States, the exercise of any jurisdiction, other than that of the Articles of War, over the members of the army.

Article 12 is new, and gives general courts-martial "power to try any person subject to military law for any crime or offense made punishable" by the Articles of War. The defendant argues that this excludes the exercise of jurisdiction by any civil court.

A new section (article 15) states that the jurisdiction conferred upon courts-martial "shall not be construed as depriving military commissions, provost courts, or other military tribunals of concurrent jurisdiction" over offenses triable by those bodies. The point is made by the defendant that the words "civil tribunals" are not specifically included, and it is argued that their former concurrent jurisdiction is thereby inferentially repealed.

The new articles show recognition of the existence and procedure of civil criminal courts by the wording of the authority to subpœna wit-

nesses before courts-martial and by the authority to punish those who disobey subpœnas, through a proceeding "in the District Court of the United States," and add the words "jurisdiction being hereby conferred upon such courts for such purpose" (articles 22 and 23). This last provision was evidently made necessary from the fact that the District Courts of the United States did not have, prior to this legislation, jurisdiction to punish for contempt committed before a court-martial or in defiance of its subpœna. But the defendant argues that these words show a limitation of the jurisdiction of the District Court to the express powers therein conferred.

The other sections of the new Articles of War present no phase of the present subject different from the former articles until we reach section 74, under the general subdivision of "Arrest—Confinement." Article 74 (which takes the place of the former article 59) provides that:

"When any person subject to military law * * * is accused of a crime or offense committed within the geographical limits of the states of the Union and the District of Columbia, and punishable by the laws of the land, the commanding officer is required, except in time of war, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial. Any commanding officer who upon such application refuses or willfully neglects, except in time of war, to deliver over such accused person to the civil authorities or to aid the officers of justice in apprehending and securing him, shall be dismissed from the service or suffer such other punishment as a court-martial may direct."

The words "except in time of war" are old, but are of course significant at the present moment, for the case at bar arises when the United States is at war, and the evident purpose of the section is to provide that an army officer is not to be delivered over or hunted out and run down by the army upon the demand of the civil authorities, if his services in time of war are required in the army.

The new words, "the geographical limits of the states of the Union and the District of Columbia," evidently specify the territory between the Atlantic and Pacific Ocean and between the Canadian boundary and the Mexican line, and they thus include the civil authorities of the United States; but the section is not limited to crimes or offenses committed against a state or its inhabitants or the District of Columbia, or under state laws, as opposed to laws of the United States.

The penalty of dismissal from the service applies as before to a refusal or neglect to aid the the civil authorities "except in time of war." This bears out the contention of the government that the law does not and cannot mean to prohibit all delivery of accused military persons during war time. On the contrary, it is evidently intended to give the military officers discretion in war time as to whether a person should be delivered, but to make such delivery compulsory when the nation is not at war.

When we reach articles 83, 84, 87, 92, 93, and 94, we find definitions of military offenses similar to those defined as crimes in the civil Penal Code.

Article 92 provides the penalty of death for murder or rape "as a court-martial may direct; but no person shall be tried by court-martial for murder or rape committed within the geographical limits of the states of the Union and the District of Columbia in time of peace." This adds to the language of old section 58 the words quoted above, but the provision conferring jurisdiction is no broader than the words of the old statute, "shall be punishable by court-martial."

Article 93 provides in similar words with reference to the other crimes formerly covered by section 58.

Article 94 is as follows:

"*Frauds against the Government.*—Any person subject to military law who makes or causes to be made any claim against the United States, or any officer thereof, knowing such claim to be false or fraudulent; or

"Who presents or causes to be presented to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof, knowing such claim to be false or fraudulent; or

"Who enters into any agreement or conspiracy to defraud the United States by obtaining, or aiding others to obtain, the allowance or payment of any false or fraudulent claim," etc.

The remaining articles present no particular variation from the questions stated above. Article 96 and article 104 are general sections to cover matters not before expressly defined, and by a separate section of the Appropriation Law of August 29, 1916, the provisions of the Articles of War are in some respects not to take effect until March 1, 1917. Article 92, which includes definition of the offense similar to that in the present indictment, was, however, to take effect at once.

The question of martial law during the occupation of a military force is not involved in this application. Under such conditions the Articles of War may become the sole law of the place, and the civil law or territorial laws would be suspended. Even in a foreign country, the new Articles of War would be the code under which the army would be governed. Coleman v. Tennessee, supra, 97 U. S. at pages 516 and 517, 24 L. Ed. 1118.

But the question involved in the present motion is simply whether the new Articles of War have repealed by act of Congress the concurrent jurisdiction previously vesting under the Constitution in civil courts for the trial of crimes committed by an officer or member of the army, and, if not, whether the new language produces that effect in time of war, even though the army does not act under the Articles of War, to exert its own, and in such case superior, jurisdiction to deal with the charge by retaining physical control of the accused, and by proceeding to hear and dispose of the case before relinquishing him for civil arrest (article 74).

But in these respects the new Articles of War show no intent on the part of Congress to limit jurisdiction over crimes to courts-martial even in time of war. The language of the sections is in each case evidently intended to confer jurisdiction on the army; but it does not, except in express instances, restrict such other jurisdiction as may already exist. Nor does the language support the proposition that the changes were intended by inference to effect a different result.

The defendant has drawn a wrong conclusion from the words extending concurrent military jurisdiction over certain matters, which previously had been debatable, and has sought to show a similar extension in the nature of the jurisdiction conferred. But the words which actually create the jurisdiction (as opposed to those defining its application to specific matters) are the same in the new law as in the old.

The defendant has likewise incorrectly interpreted the words defining the territory within which the Articles of War shall be in force, by assuming that these words are made a limit to, and a part of, the definition of what kind of jurisdiction shall be exercised therein. His error in interpretation of the words "within the geographical limits of the states of the Union and the District of Columbia" has been already pointed out, and further illustrates the idea on his part that these words affect the nature of the jurisdiction, itself, which is conferred within those limits.

But there is nothing in the entire Code as amended which supports the idea that the law in its present form confers sole jurisdiction upon the military authorities in any different way, or of any different nature, than that which was conferred by the law previously in force and interpreted by the cases above cited.

In the present case the defendant has in effect been delivered over to the civil authorities, even in time of war, by the mere fact that, without interference from his superior officers, he has been subjected to arrest, and has been, and is being, allowed to appear to answer the charge. The jurisdiction of the civil court is therefore complete, and will continue so far as is proper and necessary, giving due regard to the needs of the country as expressed through its military officers. His limits of confinement have been enlarged on bail, but the rights of this court to proceed when he is before it, in the usual meaning of those words, have been in no way repealed by the passage of the present Articles of War.

The defendant will therefore be required to plead generally to the indictment, and his special plea to jurisdiction will be overruled.