## WHITNEY v. UNITED STATES.
### No. 1684.

Circuit Court of Appeals, Tenth Circuit.

Oct. 17, 1938.

John W. Tillman and Fred A. Tillman, both of Pawhuska, Okl., for appellant.

Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl. (Paul O. Simms, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

Appellant was charged by indictment containing four counts with violation of Section 207, Title 18 U.S.C.A., in accepting a bribe. Motion to quash same and demurrer thereto were overruled, exceptions saved, when he was tried and convicted on count one and sentenced, and this appeal prosecuted.

In said count he was charged with being an officer, agent and employee of the Unit-ed States of America, to-wit, an agent and employee of the Osage Indian Agency at Pawhuska, Oklahoma, and while acting in such official capacity, did on or about the 7th day of November, 1935, in Pawhuska, Oklahoma, within the Northern District, ask for, accept and receive One Hundred Eighty-Eight and 50/100 ($188.50) Dollars from Hahn Brothers Memorial Company of Blackwell, Oklahoma, with the unlawful intent to have his decision and action influenced on a question, matter, cause and proceeding then and there pending befor him in such official capacity and place of trust as such officer, agent and employee, acting for and on behalf of the United States, to-wit, the matter of submitting or recommending for approval to the Superintendent of the Osage Indian Agency at Pawhuska, of certain contracts calling for the expenditure of restricted funds in the custody of the United States in the purchase of tombstones from Hahn Brothers Memorial Company.

This said count is based on Title 18 U.S.C.A. § 207, which reads as follows:

"Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof; or whoever * * * shall ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of money or the value of thing so asked * * *."

To sustain the issues joined, the government introduced evidence by D. Gentry that said Whitney was a senior clerk in the Osage Agency and a part of his duties was to collect information and receive bids concerning proposals and applications for the sale of tombstones for Osage Indians; that he collected such data for the Superintendent or acting Superintendent to pass on; that said Whitney received such proposals in some instances from field men, assembling all such data concerning price, kind, and description of the tombstones, and submitting same to such Superintendent, who

then instructed said Whitney to ask the Department in Washington, D. C. by letter for authority to make such purchase; that restricted funds may be expended with the approval of the Secretary of the Interior, and if such an Indian desires to purchase something he usually contacts an outside party who is a leader with reference to the purchase, and then makes application to the Superintendent of the Osage Agency for such purchase, all papers being referred to a clerk of said agency for the purpose of assembling the data, compilation, etc., for presentation to such Superintendent, after which said Whitney is instructed to ask in writing, in name of such Superintendent, for authority from the Department in Washington, D. C. to make the purchase; that after such authority is granted the monument dealer is required to post a bond and said Whitney prepares a letter to the dealer authorizing the purchase.

Gentry further testified that when the Superintendent was away he acted as Superintendent and relied upon the data furnished by Whitney in recommending approval of purchases. On cross-examination he testified that there was not a clerk in the office but what had some responsibility, and that the Superintendent and chief clerk depended upon their write-ups and the data gathered by them to pass judgment on what should be done.

George Tselos testified that he was in the confectionary business in Pawhuska and had cashed such checks for Whitney endorsed by him, and had gotten money on the check which Fred Hahn had given Whitney, turning same over to Whitney in accordance with his request.

Phillip Hahn, monument dealer in Blackwell, Oklahoma, testified that in the spring of 1935 he had a conversation with Whitney at Pawhuska, during which he told Whitney that he had negotiated a sale for a monument but could not get any action on it; that in April, 1935, he had a conversation with Whitney in a restaurant in Pawhuska, in which he told Whitney that his agent had said the reason the work did not go through was because it was customary that Whitney received two and a half per cent from all dealers with whom he had been doing business, and then he asked Whitney if that was a fact and Whitney replied that he would not do it for less than five per cent; and that he had paid Whitney several commissions so that Whitney would see that the money was gotten out of the Department in payment for monument sales to the Indians.

G. Fred Hahn, of Blackwell, Oklahoma, testified that he was in the monument business and in November, 1935, Whitney called his office and asked him to come to the Larkin Hotel, and Whitney upon his arrival said, "You know why I am here," and that he wrote a check to Whitney in accordance with an understanding that Whitney had with his brother, Phillip Hahn, relative to a commission on business sold for Mr. and Mrs. Hunter.

Whitney testified in his own behalf that he had been employed in the United States government service about twelve and one-half years, ten and one-half of which were with the Osage Indian Agency at Pawhuska as a clerk; that he did not make any recommendations to the Superintendent, and did not have anything to do with influencing one way or another the approval or disapproval of the monument transactions, except to follow the routine in the collection of data and submit it to the Superintendent. On cross examination he admitted receiving One Hundred Eighty-eight and 50/100 ($188.50) Dollars from the Hahn Brothers, but stated that such check was paid to him months after the company had put up the monument, and that it was within his power to hold up and delay action on matters involving monuments, but if he did it would only be a question of a few days or a couple of weeks at most before an interested dealer or Indian would be calling to know why it was being held up.

The contention of the appellant is that the evidence is insufficient to sustain a conviction on said count for the reason there was a failure of proof to show that Whitney had any recommendation to make to the Superintendent, or that any decision or action on the matters pending before him could be influenced since his duties were purely routine and he had no decision, action, or recommendation to make, and consequently could not receive money in exchange for something that he did not have the power to do in an official capacity. This is without merit.

The appellant, within such classification as a public officer, is not to be acquitted of the charge of bribery because that which he agreed to accept as a bribe for doing, was what he was legally bound to do. State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L.R.A.,N.S., 533, 9 Ann.Cas. 1203;

Glover v. State, 109 Ind. 391, 10 N.E. 282; State v. Ellis, 33 N.J.L. 102, 97 Am.Dec. 707; Weil v. Black, 76 W.Va. 685, 86 S.E. 666; People v. Jackson, 191 N.Y. 293, 84 N.E. 65, 15 L.R.A.,N.S., 1173, 14 Ann.Cas. 243; State v. Lehman, 182 Mo. 424, 81 S. W. 1118, 66 L.R.A. 490, 103 Am.St.Rep. 670.

█ It does not matter whether, when accepting a bribe to do an act apparently within his jurisdiction, he actually had such jurisdiction. Official action means such as properly belongs to the office and is intended by the officer or employee to be such.

█ An officer is punishable for accepting a bribe the same as if he had had complete jurisdiction, provided the action to be corruptly taken was in form appropriate to the office or employment held by him. State v. Goss, 69 Me. 22, 1 Bishop, Crim.Law, Sec. 917, and Mecham Pub.Off., Sec. 336; Throop on Public Offices, Sec. 66.

█ It is not necessary that such official or employee be one who is required to make a decision, but that he was within the class charged with making preliminary investigation comes within the act.

In Sears v. United States, 1 Cir., 264 F. 257, the court said [page 261]:

"The fact that these inspectors acted only in a preliminary or in an advisory capacity, and without final power to reject or accept, does not prevent their duties from being official duties. Final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice. In the Birdsall Case [United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930], the functions of the special officers convicted were purely advisory—the final decision on the application for executive clemency being that the President, who necessarily relied in large part upon the Secretary of the Interior and the Commissioner of Indian Affairs, who in turn relied upon the advice of the defendants. Honesty at the top is not enough; it must begin at the bottom and run through the whole service."

See, also, Browne v. United States, 6 Cir., 290 F. 870, Rembrandt v. United States, 6 Cir., 281 F. 122, and Fall v. United States, 60 App.D.C. 124, 49 F.2d 506.

█ The gravamen of the offense charged is not the execution of the contracts, but the acceptance of a bribe to influence his official conduct. Sharp v. United States, 8 Cir., 138 F. 878, Rembrandt v. United

States, supra, and Fall v. United States, supra.

In United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930, the court said [page 514]:

"Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis (United States v. George, 228 U. S. 14, 22, 33 S.Ct. 412, 57 L.Ed. 712) for the charge in the present cases, if the action is sought to be influenced was official action. To constitute it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the Department under whose authority the officer was acting. (Rev.Stat., § 161 [5 U.S.C.A. § 22]; Benson v. Henkel, 198 U. S. 1, 12, 25 S.Ct. 569, 49 L.Ed. 919, 922; Haas v. Henkel, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569, 577, 17 Ann.Cas. 1112). Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities. United States v. Macdaniel, 7 Pet. 1, 14, 8 L.Ed. 587, 592. In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery. Haas v. Henkel, supra."

In Daniels v. United States, 9 Cir., 17 F.2d 339, the court said [page 343]:

" 'Final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice.' * * * It is generally held that to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong. 'Nor is a public officer to be held acquitted of the charge of bribery because that which he agreed to accept as a bribe for doing, was no more than he was legally bound to do.' "

Among the duties to be performed by appellant as clerk in the Osage Indian Agency was that of assembling the necessary data in connection with monument sales, which would enable the Superintendent of the Agency to recommend or refuse to recommend the release of restricted funds in payment therefor, which could not

be done until said clerk had taken the necessary action in assembling the same. The evidence shows that he not only took but solicited money in connection with said sales, and whether his action was influenced is immaterial. The money was solicited and taken for the purpose of causing the Hahn Brothers Memorial Company to believe that they would get more consideration than they would otherwise.

The record fully sustains the conviction of Whitney under count one.

The judgment of the lower court is affirmed.