UNITED STATES v. CANELLA.

No. 17817.

District Court, S. D. California, Central Division.

Nov. 26, 1945.

Charles H. Carr, U. S. Atty., and E. A. Tolin, Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff.

Otto Christensen, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The defendant, Joseph James Canella, a colonel in the United States Army, in an indictment filed on June 23, 1945, is charged with the violation of Section 207, 18 U.S.C.A. Specifically, he is charged with asking, accepting and receiving a sum of money from a person with intent to influence his action, acting in his official capacity as Post Quartermaster, in awarding a certain army contract.

The Section, under which the prosecution is instituted, dates back to 1853. It has undergone many changes and its present form dates to March 4, 1909, Chap. 321, Sec. 117, 35 Stats. 1109. The aim of the section is to punish officers of the United States for accepting bribes. The offense

can only be committed by one, who is such an officer or who is acting for, or on behalf of, the United States in any official capacity. See my opinion in United States v. Furer, D.C.Cal.1942, 47 F.Supp. 402. The givers of bribes are not punishable under this section, but under Section 91, 18 U.S.C.A., although it has been held that persons *not officers* may be guilty of conspiracy with an officer to commit the crime denounced by Section 207, 18 U.S.C.A., despite the fact that the officer alone could be guilty of the substantive offense. O'Leary v. United States, 7 Cir., 1931, 53 F.2d 956.

The gist of the offense is not the execution of the agreement for which the bribe is taken, but the acceptance of money, contracts or gratuities with the understanding that the officer's official conduct shall be influenced. Fall v. United States, 1932, 60 App.D.C. 124, 49 F.2d 506; Whitney v. United States, 10 Cir., 1938, 99 F.2d 327. The official act which it is sought to influence need not be one specifically described by statute. It is sufficient if it is within the scope of the duties of the officer under the regulations of the department in which he is acting. Daniels v. United States, 9 Cir., 1927, 17 F.2d 339. As said by Mr. Justice Hughes in United States v. Birdsall, 1914, 233 U.S. 223, 230, 231, 34 S.Ct. 512, 514, 58 L.Ed. 930: "Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis (United States v. George, 228 U.S. 14, 22, 33 S.Ct. 412, 57 L.Ed. 712, 715) for the charge in the present cases, if the action sought to be influenced was official action. To constitute its official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the Department under whose authority the officer was acting (Rev.Stat., § 161 [5 U.S.C.A. § 22], Benson v. Henkel, 198 U.S. 1, 12, 25 S.Ct. 569, 49 L.Ed. 919, 922; Haas v. Henkel, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569, 577, 17 Ann.Cas. 1112.) Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities. United States v. Macdaniel, 7 Pet. 1, 14, 8 L.Ed. 587, 592. In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery. Haas v. Henkel, supra." And see, Cooper v. O'Connor, U.S.App., 1938, 69 App.D.C. 100, 99 F.2d 135, 139, 118 A.L.R. 1440; Whitney v. United States, 10 Cir., 1938, 99 F.2d 327, 330.

The defendant has filed a motion to dismiss the indictment and to abate the prosecution and a demurrer.

The fundamental ground in both is that the indictment charges a substantive offense based on acts committed by the defendant while exercising his official capacity as an officer of the United States Army, that such act constitutes a violation of his oath as an officer of the United States Army, and that, consequently, he is not amenable to prosecution in the civil courts of the United States.

Jurisdiction of the court is challenged on this ground.

The demurrer also urges the general ground that "the said Indictment does not state facts sufficient to charge the said defendant (a) with having committed any crime or offense against the United States of America; (b) the matters and things alleged in said Indictment do not constitute an offense against the laws of the United States of America."

This general attack is not particularized in any respect in the memorandum which accompanies the motions. And no argument was presented at the hearing. So the problem is not any specific flaw pointed out to the court, but whether, on the whole, the indictment alleges the facts with "sufficient clearness to show a violation of law" and apprise the defendant of the crime with which he is accused. See Johnson v. United States, 9 Cir., 1932, 59 F.2d 42, 44.

This principle is stated by the Supreme Court in United States v. Behrman, 1922, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619, in this manner: "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense. If the offense be a statutory one, and intent or knowledge is not made an element of it, the in-

dictment need not charge such knowledge or intent." And see: Hagner v. United States, 1932, 285 U.S. 427, 431–433, 52 S. Ct. 417, 76 L.Ed. 861; Zuziak v. United States, 9 Cir., 1941, 119 F.2d 140, 141; Frankfort Distillers v. United States, 10 Cir., 1944, 144 F.2d 824, 830.

We go to the indictment.

It charges the offense with more than ordinary particularity. The capacity of the defendant is averred very clearly. The matters which called for his official action are stated in detail. Then, with great fullness, the indictment alleges not only the acceptance of the bribe, but its acceptance in his official capacity, with the aim of having his official conduct influenced. The entire matter is then summed up in Paragraph 8 of the Indictment in these words:

"On or about July 6, 1942, the defendant Joseph James Canella, within the Southern District of California, Central Division, did unlawfully, wilfully, knowingly, corruptly and feloniously ask, accept and receive a sum of money, to-wit: Five Hundred Dollars lawful money of the United States of and from the aforesaid Leo Windolph with intent to have his, said defendant's, decision and action in his official capacity concerning the question and matter of action on said bids for the supply of liquified petroleum gas fuel and services in connection therewith, for use at the aforesaid Santa Ana Army Air Base, decided and acted upon by defendant favorably to the said Leo Windolph and Robert D. Windolph doing business as Windolph Bros., so that the defendant acting in his official capacity for and on behalf of the United States would accept and cause the acceptance of the aforesaid bid submitted by the aforesaid Robert D. Windolph and Leo Windolph doing business as Windolph Bros., and would award and cause a contract to be awarded to said Robert D. Windolph and Leo Windolph, doing business as Windolph Bros., for the supply of liquified petroleum gas fuel and services in connection therewith, for use at the aforesaid Santa Ana Army Air Base would be executed and delivered to the aforesaid Robert D. Windolph and Leo Windolph, doing business as Windolph Bros., and that they would be permitted to enter upon and continue in the performance thereof with the continuing approval, aid and favorable decision and action of defendant in his official capacity as post quartermaster of the Santa Ana Army Air Base in all matters concerning their performance and rights and obligations under such contract."

When to these allegations we apply the touchstone of the wording of the section itself, and of the interpretations placed on it by the Courts in the cases already referred to, the conclusion is inescapable that the indictment charges, with sufficient particularity, a specific offense against the United States committed by the defendant. See: Sharp v. United States, 8 Cir., 1905, 138 F. 878; McGrath v. United States, 2 Cir., 1921, 275 F. 294.

The really serious question which the defendant raises both in his motions and in the demurrer is that this court has no jurisdiction to try him. And that to assume such jurisdiction, *even with the Army's consent, which has been given in this case*, and to deprive him of the right to be tried by court martial, is *to deny him due process*.

The basis for this argument is that the Articles of War, 10 U.S.C.A. Secs. 1471–1593, provide a complete penal code punishing the offenses of persons subject to military law.

At the outset, it may be stated that we find no Article of War which punishes *directly or specifically* bribery of the type charged here.

Fraud against the Government is punished by Article 94, 10 U.S.C.A. § 1566. Of course, the acceptance of money by an army officer for the purpose of influencing his conduct might be considered a fraud and prosecuted as such. United States v. Furer, D.C.Cal.1942, 47 F.Supp. 402. The defendant refers us to Articles 56, 10 U.S.C.A. § 1528, and 87, 10 U.S.C.A. § 1559. But Article 56 denounces bribery *only in conjunction with false mustering.* Article 87 merely punishes an officer who is "interested in the sale of any victuals or other necessaries of life brought into such garrison, fort, barracks, camp, or other place for the use of the troops." I do not think that either article is broad enough to cover the acceptance of a bribe for letting a contract for supplies. However, for the purpose of the argument I assume that either of these Articles or some of the general punitive articles—such as the ones which punish conduct unbecoming an officer and gentleman, Article 95, 10 U.S. C.A. § 1567, or conduct prejudicial to the service, Article 96, 10 U.S.C.A. § 1568, could be made to cover the situation, so as

to allow the prosecution of the defendant by court martial.

With this assumption, I approach the problem of jurisdiction. I concede that one may, by arguing general principles, build up a rather strong case for the contention that, because of the provisions of the Articles of War and of the Manual regulating courts martial, an army officer of high rank who "when it can be avoided, must not be tried by officers inferior in rank to him" Article of War 16, 10 U.S.C.A. § 1487, should not be tried by a jury of laymen when, while acting as an army officer he commits an offense which is also denounced by the Articles of War. It may even be conceded that a certain advantage might be gained by an officer of high rank if he is tried by a court martial composed of officers like himself. But we cannot change such an advantage into due process, when the Congress of the United States has given civil courts concurrent jurisdiction with the military when a criminal act is an offense both against the Articles of War and the criminal law of the United States or of the States. There are to be found in decisions certain general statements which, if taken from their context, might indicate that the courts of the United States have favored trial of military personnel by military courts. But when these statements are taken in conjunction with the ruling made in the particular case, we find that the courts were *not* saying *that trial of military personnel* by military courts was the only form of due process. What they were saying was *that it was due process,* despite the fact that before a military tribunal the right of indictment by a grand jury and trial by a jury was denied them.[1] And notwithstanding the changes which the Articles of War have undergone since their original enactment, through the Civil War, the First World War and the present one, courts which have been called upon to determine whether the jurisdiction conferred by them is exclusive, have refused to give to the military courts sole jurisdiction. They have held that civil courts have concurrent jurisdiction and may, *with the army's consent,* or after taking jurisdiction first, try a member of the Armed Forces for an offense which is also punishable under the Articles of War. These rulings are in strict accord with the powers of the Congress and the President under the Constitution. United States Constitution, Article I, Sec. 8, Clauses 1, 10, 11, 12, 13, 14, 18; Article 2, Sec. 1, Cl. 1; Article 2, Sec. 3, Cl. 1; and see Ex parte Quirin, 1942, 317 U.S. 1, 25–27, 63 S.Ct. 2, 87 L.Ed. 3; see Article of War 2, 10 U.S.C.A. § 1473; Article 15, 10 U.S.C.A. § 1486; Article 74, 10 U.S.C.A. § 1546; Article 92, 10 U.S.C.A. § 1564; Article 93, 10 U.S.C.A. § 1565; Article 94, 10 U.S.C.A. § 1566; and see the following cases, arranged chronologically, which have applied the principle both in peace and war time: Coleman v. Tennessee, 1878, 97 U.S. 509, 24 L.Ed. 1118; Ex parte Mason, 1881, 105 U.S. 696, 26 L.Ed. 1213; United States v. Clark, C.C.Mich. 1887, 31 F. 710; Neall v. United States, 9 Cir., 1902, 118 F. 699; Drury v. Lewis, 1906, 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343; Franklin v. United States, 1910, 216 U.S. 559, 30 S.Ct. 434, 54 L.Ed. 615; Caldwell v. Parker, 1920, 252 U.S. 376, 40 S.Ct. 388, 64 L.Ed. 621; People v. Denman, 1918, 179 Cal. 497, 177 P. 461; In re Koester, 1922, 56 Cal.App. 621, 624, 206 P. 116; United States v. Hirsch, D.C.1918, 254 F. 109; United States v. McDonald, D.C.N.Y. 1920, 265 F. 754, 760; United States v.

1 About the only legal advantage that can be gained from courts martial lies in the fact that they are courts of limited jurisdiction and their judgments, *even after they become final,* may be attacked collaterally. Kahn v. Anderson, 1921, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469; United States ex rel. Harris v. Daniels, 2 Cir., 1922, 279 F. 844. Otherwise, the accused has more privileges before a civil court—among the most important of which are indictment by grand jury and trial by jury. It is because these rights are denied to an officer before a court martial that the officer involved in Kahn v. Anderson, supra, challenged the right of the Congress to provide for trial before military tribunals. He argued just the opposite of what the defendant here argues. He asserted that a court martial deprived him of the mentioned guarantees contained in Article III, Sec. 2, Cl. 3, of the Constitution and Articles V and VI of the Amendments. And he insisted that due process lay *in the civil courts and outside of the military tribunals.* The defendant here would have *due process made synonymous with trial by military tribunals.* The constitutional power of the Congress to provide for military tribunals declared by the Supreme Court in Kahn v. Anderson, supra, was more recently sustained in Ex parte Quirin, 1942, 317 U.S. 1, 28–38, 63 S.Ct. 2, 87 L.Ed. 3.

Matthews, D.C.Ala.1943, 49 F.Supp. 203; and see, Billings v. Truesdell, 1944, 321 U.S. 542, 547, 64 S.Ct. 737, 88 L.Ed. 917; 36 Am.Jur., Military, § 96; Winthrop's Military Law, 1929, p. 671.[2]

But it is insisted that the acceptance of the bribe charged in the indictment was in conjunction with an act performed by the defendant as an officer of the United States Army.

This fact does not alter the situation. An officer of the United States Army is also an officer of the United States. His oath as an army officer, *as that of any soldier,* is also an oath of fealty to the Government of the United States. It reads: "I, ———, do solemnly swear (or affirm) *that I will bear true faith and allegiance to the United States of America; that I will serve them honestly and faithfully against all their enemies whomsoever;* and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the Rules and Articles of War." Article of War 109, 10 U.S.C.A. § 1581. (Emphasis added.)

Thus, the pledge of loyalty to the United States is given primacy over obedience to superior officers. In at least two of the cases referred to, the act charged could not have been committed by one *who was not,* at the time, a member of the military forces. The argument made was identical with the one here made that, because of this, exclusive jurisdiction lay in military courts. In Franklin v. United States, 1910, 216 U.S. 559, 30 S.Ct. 434, 54 L.Ed. 615, the defendant was an army officer, who was charged, *as Treasurer of the United States Military Academy,* with embezzlement of certain personal property of the cadets of the Academy. The defendant, after first pleading guilty, moved in arrest of judgment. One of the grounds was:

"Because, by the Constitution and the laws of the United States, this court here has no jurisdiction of the offense alleged to have been committed by this defendant in said fourth, fifth, and sixth counts of the said indictments, because he says the said § 2, chapter 576, of the said act of Congress approved July 7, 1898, confers upon this court here no jurisdiction of this cause, nor any legal power to hear, try, and determine the same, inasmuch as the punishment for the offense alleged in said indictment, and in each and every count thereof, when committed by the treasurer of the United States Military Academy, *an officer of the Army of the United States, is provided for by § 1342, Revised Statutes of United States * * *; and inasmuch as, by the said Constitution and laws, exclusive jurisdiction over said offense, when committed by a person subject to military jurisdiction, is vested in the properly* constituted and authorized courts-martial of the United States." Franklin v. United States, 1910, 216 U.S. 559, 561, 30 S.Ct. 434, 435, 54 L.Ed. 615. (Emphasis added.)

Disposing of the contention, Mr. Chief Justice Fuller said: "It is well settled that the 62d article of war does not vest, nor purport to vest, *exclusive jurisdiction * * * over all offenses committed by a military officer which may be punished by a court-martial under the provisions of that article.*" Franklin v. United States, supra, 216 U.S. at page 567, 30 S.Ct. at page 436, 54 L.Ed. 615.

In United States v. Hirsch, D.C.N.Y. 1918, 254 F. 109, the defendant was an Army Colonel in the Quartermaster Corps. He was charged, in the United States District Court, with others, with conspiracy to defraud the United States. While anyone may be guilty of this offense, the defendant Hirsch's part consisted wholly of acts done while acting as an Army officer *in time of war.* Fraud and conspiracy to defraud are denounced specifically by Article 94, 10 U.S.C.A. § 1566. Notwithstanding this, the jurisdiction of the civil court was sustained, the Court saying: "But there is nothing in the entire *Code as amended*

[2] I had occasion, in United States v. Joseph James Canella, No. 17160-Y, to pass upon the same question. That was a charge of conspiracy to defraud the United States, directed at the defendant here and others. The defendant attacked the jurisdiction of the court essentially on the same grounds as are advanced here. On September 18, 1944, I rendered an oral opinion, which, *although not officially published,* is on file in the records in the case. In it I analyzed most of the cases just cited and reached the same conclusion.

The earnestness with which present counsel, who were not counsel in the prior case, press the point has caused me to give further thought to the matter and to formulate my conclusions in a formal opinion for publication.

*which supports the idea that the law in its present form confers sole jurisdiction upon the military authorities in any different way, or of any different nature, than that which was conferred by the law previously in force and interpreted by the cases above cited. In the present case the defendant has in effect been delivered over to the civil authorities, even in time of war,* by the mere fact that, without interference from his superior officers, he has been subjected to arrest, and has been, and is being, allowed to appear to answer the charge. The jurisdiction of the civil court is therefore complete, and will continue so far as is proper and necessary, giving due regard to the needs of the country as expressed through its military officers. His limits of confinement have been enlarged on bail, but the rights of this court to proceed when he is before it, in the usual meaning of those words, have been in no way repealed by the passage of the present Articles of War." United States v. Hirsch, supra, 254 F. at page 113. (Emphasis added.) The ruling in this case was approved by the Supreme Court in Caldwell v. Parker, 1920, 252 U.S. 376, 388, 40 S.Ct. 388, 64 L.Ed. 621.

These rulings are consonant with the philosophy which has dominated our national life. We are not a militaristic nation. We have ever been opposed to a large standing army. We have never, in peace time, surrendered control of civilian affairs to the army. Such control has been recognized only in the exercise of war powers and within limited scope. See Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 99–102, 63 S.Ct. 1375, 87 L.Ed. 1774; Toyosaburo Korematsu v. United States, 1944, 323 U.S. 214, 217–219, 65 S. Ct. 193. Distrust of the professional military is traditional with us, and with the English-speaking world. While willing to give to the military all the powers they need, especially in time of war, we have not allowed them, *at any time*, without a declaration of martial law, to interfere with the ordinary functions of civilian government. Mr. Justice Field, in Coleman v. Tennessee, 1878, 97 U.S. 509, 514, 24 L.Ed. 1118, referred to this tradition in these words:

"Previous to its enactment, the offences designated were punishable by the State Courts, and persons in the military service who committed them were delivered over to those courts for trial; and it contains no words indicating an intention on the part of Congress to take from them the jurisdiction in this respect which they have always exercised. *With the known hostility of the American people to any interference by the military with the regular administration of justice in the civil courts, no such intention should be ascribed to Congress in the absence of clear and direct language to that effect.*

"We do not mean to intimate that it was not within the competency of Congress to confer exclusive jurisdiction upon military courts over offences committed by persons in the military service of the United States. As Congress is expressly authorized by the Constitution 'to raise and support armies,' and 'to make rules for the government and regulation of the land and naval forces,' its control over the whole subject of the formation, organization, and government of the national armies, including therein the punishment of offences committed by persons in the military service, would seem to be plenary. All we now affirm is, that by the law to which we are referred, the thirtieth section of the Enrollment Act, no such exclusive jurisdiction is vested in the military tribunals mentioned. *No public policy would have been subserved by investing them with such jurisdiction, and many reasons may be suggested against it.*" (Emphasis added.)

The tradition, of which Mr. Justice Field spoke, goes back many years into the history of England. England and the United States are the only countries in the world in which a regular army officer has never held the office of Secretary of War, or a regular Navy officer the office of Secretary of Navy. We have Chiefs of Staff, who direct military and naval action on the technical side, but the heads of Departments, *who determine policy* are civilians. In this manner, we have not developed in the Army or Navy a professional officer's caste, having special privileges, except within very narrow limits. So, in the absence of direct indication to the contrary, *it can never be assumed that the Congress of the United States ever intended, even in time of war, to deprive the Government of the United States, of which the Army is a part, of the right to try soldiers, be they officers or enlisted men, for crimes committed against it.*

To hold that a member of the Armed Forces acquires, as a constitutional right, the right to be tried only by court martial,

is to fly in the face of these traditions. Of course, the Congress of the United States could give to army personnel immunity from prosecution by civil authorities. *But they have not chosen to do so.* And *unless they do so explicitly,* courts, in the light of our history, cannot assume that they had such intention.

Hence concurrent jurisdiction finds justification in the acts of Congress, as interpreted by our highest courts, in the light of the mores of our people. And a court, which, in such a situation, would give to army courts martial exclusive jurisdiction of offenses denounced by both the Articles of War and the criminal law of the United States, would be violating the letter of the law and the spirit and historical tradition which lay behind it.

Hence the following rulings:

(1) The defendant's demurrer to the indictment is overruled.

(2) The defendant's motion to dismiss the indictment and to abate the prosecution is denied.

Exception to the defendant as to each of the rulings.