**UNITED STATES of America,**
**Plaintiff,**

v.

**Donald Wayne BIXLER, Gary Wayne Hinkle and David Lee Thayer,**
**Defendants.**

**No. KC–CR–1368.**

United States District Court,
D. Kansas.

Jan. 14, 1971.

---

Robert J. Roth, U. S. Atty., Wichita, Kan., and Glen S. Kelly, Asst. U. S. Atty., Kansas City, Kan., for plaintiff.

Stephen T. Mermigis, Kansas City, Kan., for defendant Donald Wayne Bixler.

Jerald R. Long, of Alder & Rixner, Overland Park, Kan., for defendant Gary Wayne Hinkle.

Neal Hambleton, of Hambleton & Rossman, Olathe, Kan., for defendant David Lee Thayer.

## OPINION

ARTHUR J. STANLEY, Jr., Chief Judge.

In this criminal action the defendants are charged with violation of 18 U.S.C. §§ 641 and 2. The matter is now before the court on the defendants' motion to dismiss for lack of jurisdiction.

The information charges that the defendants stole and converted to their own use property of the United States. The offense is alleged to have been committed on the army post at Fort Leavenworth, Kansas. All of them were, at the time of the commission of this alleged offense, in military service and stationed at Fort Leavenworth. The principal question raised by the motion is whether, under the facts just recited, military jurisdiction is exclusive, so as to preclude the prosecution of the defendants under § 641. The question is substantial because the maximum penalty for violation of Articles 108 and 121 of the Uniform Code of Military Justice is confinement for five years at hard labor, whereas the maximum punishment under § 641 is ten years imprisonment.

The defendants rely upon the decision of the United States Supreme Court in O'Callahan v. Parker, 395 U.S. 258, 89

S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Court there held that a military court-martial is without jurisdiction to try military personnel for "non-service connected" crimes. It is clear that the decision was intended to secure to military personnel the constitutional right to indictment by a grand jury and trial by jury, and to free servicemen from trial marked by "retributive justice," where the crime committed has no military significance. The defendants seek to apply the *O'Callahan* decision in reverse, reading it as holding that civilian courts have no jurisdiction to try servicemen for offenses committed on-post and against military property, where the crime committed is punishable under the Uniform Code of Military Justice. The Court did not reach this question in *O'Callahan* and defendants' argument rests entirely upon reverse implication from that decision.

■ Courts in similar cases have considered the same argument as that presently made by the defendants, and have rejected the contention that civil courts had no jurisdiction. Peek v. United States, 321 F.2d 934 (9th Cir. 1963), cert. denied, 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964); United States v. Canella, 63 F.Supp. 377 (S.D.Cal.1945), aff'd, 157 F.2d 470 (9th Cir. 1946). See also 5 A.L.R.3d 802. I do not believe that the vitality of these cases was diminished by *O'Callahan*, since the question decided in *Peek* and *Canella* was not raised in *O'Callahan*. The court said in *Peek*:

> "Since the offenses alleged in Counts I through IV of the indictment against Peek were committed on a military reservation, involved only military personnel, and were violations of the Uniform Code of Military Justice, a military tribunal would have jurisdiction. However, United States money was involved, and as indicated in Title 18 of the United States Code, these crimes were also offenses against the United States. The district courts have 'original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.' * * *

> "To resolve the question of jurisdiction in the instant case, this court need not determine whether a military tribunal has either exclusive, primary or 'preferential' or concurrent jurisdiction.

> "Article 14(a) of the Uniform Code of Military Justice (10 U.S.C. § 814) states:

>> "'(a) Under such regulations as the Secretary concerned may prescribe, a member of the armed forces accused of an offense against civil authority may be delivered, upon request, to the civil authority for trial.'

>> \* \* \* \* \* \*

> "Article 14(a) does not establish, or even indicate, a hierarchy of jurisdiction as between civil and military authorities. It merely provides, that, upon request, a member of the armed forces who is accused of an offense against civil authority may be delivered to the civil authority for trial. If the civil authority had jurisdiction and the member of the armed forces was delivered to that authority, jurisdiction in the civil authority is established." (pp. 936–937)

I agree with the reasoning expressed and believe it to be equally applicable to our case. There were reasons for the decision in *O'Callahan* which do not exist when the holding in that case is applied in reverse.

■ The defendants also assert that a distinction between "special and general" statutes should be recognized with respect to our jurisdictional question. They say that Article 108 of the Uniform Code of Military Justice is concerned specifically with the wrongful disposition of *military* property, whereas 18 U.S.C. § 641 is not limited to any particular species of property so long as it is owned by the United States. It follows, they contend, that the military should have jurisdiction by virtue of the

"special" statute covering the offense committed by the defendants. The cases upon which the defendants rely to support this proposition involve two offenses under Title 18, and not with two offenses, one under military and the other under civil law. As the court commented in United States v. Canella, *supra*:

" * * * (T)he Congress of the United States has given civil courts concurrent jurisdiction with the military when a criminal act is an offense both against the Articles of War and the criminal law of the United States or of the States. * * * (C)ourts which have been called upon to determine whether the jurisdiction conferred by them is exclusive, have refused to give to the military courts sole jurisdiction. They have held that civil courts have concurrent jurisdiction and may, *with the army's consent*, or after taking jurisdiction first, try a member of the Armed Forces for an offense which is also punishable under the Articles of War." (p. 381)

I do not believe that the distinction between special and general statutes is applicable where the military and civil courts have concurrent jurisdiction, as in our case.

■ Finally, the defendants contend that when army officials received the defendants from Canadian authorities at the Canadian border (they fled to Canada after the commission of these alleged offenses), transported them back to Fort Leavenworth, and detained them in custody for at least thirteen days, the army thereby assumed jurisdiction of this matter. The defendants state in their brief in support of this motion that Robert Space, an investigator of the U. S. Army Intelligence Corps, testified at the preliminary hearing that no formal charges, to his knowledge, had been filed against any of the defendants under the Uniform Code of Military Justice. They also admit, as is clear in any event, that military authorities released the defendants to the civilian authorities. In these circumstances, the reasoning expressed in Peek v. United States, *supra*, and 10 U.S.C. § 814, is dispositive of this contention. I do not believe that the mere detention of the defendants for a period of time before they were released to civilian authorities constitutes an assumption of jurisdiction by the military. The motion to dismiss must be denied.