**In the Matter of the Extradition of John DEMJANJUK, A.K.A. John Ivan Demjanjuk, A.K.A. John Ivan Demyanyuk.**

**Misc. No. 83–349.**

United States District Court,
N.D. Ohio, E.D.

Feb. 21, 1985.
On Parameters of Extradition Hearing
March 5, 1985.
On Jurisdiction March 8, 1985.

See also, D.C., 584 F.Supp. 1321.

Gary D. Arbeznik, Asst. U.S. Atty., Cleveland, Ohio, Murray R. Stein, Alvin D. Lodish, Michael Wolfe, Bruce Einhorn, U.S. Dept. of Justice, Washington, D.C., for petitioner.

Mark O'Connor, Buffalo, N.Y., John J. Gill, Cleveland, Ohio, for respondent.

Steven M. Schneebaum, Patton, Boggs & Blow, Washington, D.C., amicus curiae.

BATTISTI, Chief Judge.

On November 18, 1983 the United States Attorney for the Northern District of Ohio, acting for and in behalf of the government of Israel, filed a complaint requesting that this Court conduct a hearing to determine whether John Demjanjuk is extraditable to Israel, pursuant to the 1963 Extradition Treaty between the United States and Israel, T.I.A.S. 5476, 14 U.S.T. 1717. On December 17, 1984 oral argument in this matter was heard. One question addressed was "whether a United States civilian court has subject-matter jurisdiction in an extradition proceeding where the crimes alleged occurred during wartime or whether only a properly constituted military tribunal has jurisdiction over alleged war crimes?" *See* Order of December 6, 1984 at 4. 603 F.Supp. 1463, 1465.

Essentially, respondent argues that because he was a prisoner of war and a soldier and the crimes with which he is charged occurred during wartime, under international law and the United States Constitution, only a military tribunal may extradite him.[1] *In re Extradition of John Demjanjuk,* Transcript of December 17, 1984 Proceeding at 17, 20, 21–22, 23.

■ International law, the United States Constitution, federal statutes and prior judicial decisions do not support respondent's arguments. *See, e.g.,* Agreement by the Government of the United States of America, the Provisional Government of the French Republic, the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Union of Soviet Socialist Republics for the Prosecution and Punishment of the Major War Criminals of the European Axis (London Agreement) arts. 4, 6, 59 Stat. 1544, E.A.S. No. 472 (August 8, 1945); United Nations Convention on the Prevention and Punishment of the Crime of Genocide art. 6, 78 U.N.T.S. 277 (*opened for signature* December 9, 1948); *In re Ryan,* 360 F.Supp. 270 (E.D.N.Y.1973), aff'd, 478 F.2d 1397 (2d Cir.1977); *United States v. Canella,* 63 F.Supp. 377 (S.D.Cal.1945). This Court, therefore, does have subject matter jurisdiction, pursuant to 18 U.S.C. § 3184, to conduct the instant extradition hearing.

In order to preserve the integrity of these proceedings and to remain responsive to respondent's concerns, the reasons for this ruling will be fully detailed in a forthcoming opinion. This Order has been entered today to give the parties as much time as possible to prepare for the § 3184 hearing.

The parties shall appear for respondent's extradition hearing on March 12, 1985 at 10 a.m.

IT IS SO ORDERED.

## ON PARAMETERS OF EXTRADITION HEARING

On February 21, 1985 this Court held that it does have subject matter jurisdiction to hear and decide the instant extradition proceeding filed by the Petitioner United States of America [hereinafter referred to as the "Government"], acting for and in behalf of the government of Israel. Order

---

1. Throughout the briefing and argument of this case, respondent has referred to the question of military tribunals as a "jurisdictional" issue. At times, this term has caused confusion given the statutory grant of jurisdiction in 18 U.S.C. § 3184. Hence, this court by statute does have subject matter jurisdiction in an extradition proceeding. However, respondent contends that

not only must the court have subject matter jurisdiction over the extradition but it must also have jurisdiction over the subject matter of that extradition. In other words, the Court, respondent argues, must be authorized to determine cases involving alleged war crimes, which is the subject matter for which respondent's extradition is requested.

of February 21, 1985 at 2. In accordance with statements made during the February 9, 1984 Conference in this action, this Order will set forth parameters of the extradition hearing scheduled for March 12, 1985. Transcript of February 9, 1984 Proceeding at 37.

## I.

■ Title 18 U.S.C. § 3184 provides, in relevant part, that an extradition magistrate, acting pursuant to an extradition treaty or convention, may:

> ... upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same together with a copy of all the testimony taken before him, to the Secretary of State, ...

In an earlier Order, factors that must be examined in an extradition hearing were set forth. Order of December 6, 1984 at 1–2. An extradition certification is valid, if the following conditions are met:

(1) The judge must be authorized to conduct extradition proceedings.

(2) The judge must have jurisdiction of the subject matter and of the accused.

(3) The applicable treaties must be in full force and effect.

(4) The crimes for which extradition is requested must be offenses "within the treaty".

(5) The judge must determine whether the party brought before it is the one named in the complaint. *Hooker v. Klein,* 573 F.2d 1360, 1367 (9th Cir.), *cert. denied,* 439 U.S. 932 [99 S.Ct. 323, 58 L.Ed.2d 327] (1978); *see also Fernandez v. Phillips,* 268 U.S. 311 [45 S.Ct. 541, 69 L.Ed. 970] (1925); *Charlton v. Kelly,* 229 U.S. 447 [33 S.Ct. 945, 57 L.Ed. 1274] (1913).

(6) There must be "competent and adequate evidence" for the decision.

*Bingham v. Bradley,* 241 U.S. 511, 516–17, 36 S.Ct. 634, 637–38, 60 L.Ed. 1136 (1916); *Jimenez v. Aristeguieta,* 311 F.2d 547, 562 (5th Cir.1962). Order of December 6, 1984 at 2.

Items 1, 2 and 3 have already been determined. Order of December 6, 1984 at 2; Order of February 21, 1985 at 2. Items 4, 5, and 6 will be considered at the March 12, 1985 hearing.

## II.

The Court will consider the following issues in determining whether the crimes for which Demjanjuk's extradition is sought are offenses "within the treaty". 1963 Extradition Treaty between the United States and Israel, T.I.A.S. 5476, 14 U.S.T. 1717. (Item 4) (*See* Appendix for treaty provisions).

1. Does this Court have the authority, under the Extradition Treaty to extradite respondent to Israel where the Israeli government has charged him with crimes committed outside the territory of the State of Israel? (*i.e.* the "extraterritoriality" of the Extradition Treaty?)

a. Is the judicial determination of whether respondent is extraditable for the offenses charged discretionary under Article III of the Treaty because the Israeli statute under which respondent is charged asserts jurisdiction over acts which occurred outside the territory of Israel?

b. Do the laws of the United States, the requested party, provide for the punishment of similar offenses, within the meaning of Article III of the Treaty?

2. Does the extradition request fall into one of the exceptions to extradition set forth in the Treaty?

a. Is the article VI § 1 "double jeopardy" provision applicable in the instant case?

b. Is the extradition request time-barred under article VI § 3?

c. Is extradition prohibited by article VI § 4 because respondent is charged with crimes allegedly of a "political character"?

d. Do the death penalty provisions of the Nazi and Nazi Collaborators Law 5710–1950 bar extradition?

3. What effect, if any, does Israel's lack of statehood during the time the alleged crimes occurred have on whether the respondent is extraditable under the Treaty?

4. Is the Nazi and Nazi Collaborators Law an ex post facto law? If so, of what import is such a determination in these extradition proceedings?

### III.

The Government will be permitted to submit properly authenticated documents, eyewitness affidavits or depositions, warrants, and other pertinent documents. *See* 18 U.S.C. § 3190; United States-Israel Extradition Treaty art. 10. The Government may also present live expert testimony as to Items 4, 5 and 6, if it so chooses.

Respondent will be permitted to present expert testimony and documentary evidence regarding the applicability of the United States-Israeli Extradition Treaty to his extradition (Item 4). He may present eyewitness or expert testimony and documentary evidence as to whether he is the person named in the Israeli Warrant (Item 5). He may, however, only present "explanatory" evidence, not "contradictory" evidence. Order of December 6, 1984 at 2–3.

On or before March 12, 1985 at 10:00 a.m., the parties will provide the Court with a list of expected witnesses, and state in detail the scope of their testimony and its relevance to the issues raised, as well as a list of the documents they wish to offer into evidence.

*Amicus Curiae*, The International Human Rights Law Group, is asked to argue as to whether it is consistent with international law for the State of Israel to try and punish persons accused of having committed certain acts outside of its territory before the adoption of the statute purporting to provide for such criminal jurisdiction. The parties may present oral argument and proffer expert testimony as to this issue.

### IV.

An extradition court's role is limited to determining "whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction" *Collins v. Loisel*, 259 U.S. 309, 316, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922). Evidence presented by the petitioner must only be sufficient to establish "probable cause". *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); *Shapiro v. Ferrandina*, 478 F.2d 894, 900–01, (2d Cir.1973).

At the extradition hearing, respondent may not offer any evidence regarding the authenticity of the "Trawniki card" admitted into evidence during the denaturalization proceeding conducted by this Court in 1981. *See* Respondent's Explanatory Case History at 3–13 (April 2, 1984).

First, while the Israeli *Request for Extradition of John Demjanjuk* (May 18, 1983) does include the 1981 denaturalization opinion, *United States v. Demjanjuk*, 518 F.Supp. 1362 (1981), the Request does not directly or necessarily rely on the "Trawniki card". At the December 17, 1984 hearing, the Government's counsel explicitly stated that the eyewitness affidavits included as part of the Request were sufficient in themselves, apart from those affidavits incorporated via the denaturalization decision to support the extradition request. Transcript of December 17, 1984 Proceedings at 53–55 ("December Proceeding").

Second, in an extradition proceeding respondent may not introduce evidence offered to contradict the Government's proof.

*Collins v. Loisel,* 259 U.S. at 315–17, 42 S.Ct. at 471–72; *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir.1978). Even if Israel had offered the "Trawniki card" as evidence, to the extent that respondent is alleging that it is fraudulent, respondent is attempting to introduce impermissible "contradictory" evidence.

Third, respondent's pleadings present no new evidence to support his allegations as to the "Trawniki card". *See, e.g. Explanatory Case History* (April 2, 1984); *Reply to Government's Prehearing Memorandum* (May 24, 1984). Both this Court, in the context of the denaturalization proceedings, and the immigration officials who have conducted the hearing and appeal pertaining to the deportation of John Demjanjuk have repeatedly examined respondent's allegations pertaining to irregularities in the "Trawniki Card" and found these allegations to be without merit. *In Re: John Demjanjuk in Deportation Proceedings* (February 14, 1985; File A8–237–417 Cleveland); *United States v. Demjanjuk,* 518 F.Supp. 1362 (N.D.Ohio, 1981) (denaturalization decision; motion for a new trial denied); *United States v. Demjanjuk,* 103 F.R.D. 1 (N.D.Ohio 1983) (First Motion to Vacate denied); *United States v. Demjanjuk* (N.D.Ohio, February 12, 1985) (Second Motion to Vacate denied).

■ To engage in another examination of the "Trawniki Card's" validity would not only be a pointless exercise which would only establish what has already been demonstrated numerous times before but would also be an attempted attack on evidence submitted in nonextradition proceedings (*e.g.* deportation, denaturalization). This collateral attack is not within the purview of an extradition proceeding as defined by statute, treaty, or case law.[1] This extradition hearing will not be converted into a trial on the merits, *see, e.g., Matter of Sindona,* 450 F.Supp. 672, 678 (S.D.N.Y.

1978), *aff'd* 619 F.2d 167 (2d Cir.1980), or a review of prior decisions concerning the respondent.

### V.

This Court will determine the admissibility of the proffered expert testimony and decide any other evidentiary issues as they arise during the course of the § 3184 extradition hearing. These decisions are solely within the sound discretion of the extradition judge. *Hooker v. Klein,* 573 F.2d at 1369.

The parties shall appear for the extradition hearing on March 12, 1985 at 10:00 a.m.

IT IS SO ORDERED.

### APPENDIX

The Extradition Treaty provides, in relevant part:

### Article II.

Persons shall be delivered up according to the provisions of the present Convention for prosecution when they have been charged with, or to undergo sentence when they have been convicted of, any of the following offenses:

1. Murder.

2. Manslaughter.

3. Malicious wounding.

Extradition shall also be granted for attempts to commit or conspiracy to commit any of the offenses mentioned in this Article provided such attempts or such conspiracy are punishable under the laws of both Parties by a term of imprisonment exceeding three years.

Extradition shall also be granted for participation in any of the offenses mentioned in this Article.

---

1. The collateral estoppel doctrine has not been automatically applied in this case. Perhaps had respondent in his two motions to vacate or in other papers made any showing that the "Trawniki Card" was not authentic, the Court in the interests of justice and in truly extraordinary circumstances would not have been constrained by procedural doctrines. In other words, the Court might have examined the card's authenticity in an extradition proceeding. But this is not the case here.

## Article III.

When the offense has been committed outside the territorial jurisdiction of the requesting Party, extradition need not be granted unless the laws of the requested Party provide for the punishment of such an offense committed in similar circumstances.

## Article VI.

Extradition shall not be granted in any of the following circumstances:

1. When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished, in the territory of the requested Party for the offense for which his extradition is requested....

3. When the prosecution of the enforcement of the penalty for the offense has become barred by lapse of time according to the laws of the requesting Party or would be barred by lapse of time according to the laws of the requested Party had the offense been committed in its territory.

4. When the offense is regarded by the requested Party as one of a political character or if the person sought proves that the request for his extradition has, in fact, been made with a view to trying or punishing him for an offense of a political character.

## Article VII.

When the offense for which the extradition is requested is punishable by death under the laws of the requesting Party and the laws of the requested Party do not permit such punishment for that offense, extradition may be refused unless the requesting Party provides such assurances as the requested Party considers sufficient that the

death penalty shall not be imposed, or, if imposed, shall not be executed.

## ON JURISDICTION

On December 17, 1984, oral argument was heard in this case on the following question:

"Whether a United States civilian court has subject-matter jurisdiction in an extradition proceeding where the crimes alleged occurred during wartime or whether only a properly constituted military tribunal has jurisdiction over alleged war crimes?" *Order of December 6, 1984* at 4.

On February 21, 1985, in a brief, order this Court found that it had subject matter jurisdiction to hear and decide the instant extradition proceeding. This opinion more fully presents the reasons for that decision.

### I.

Throughout the briefing and argument of this case, respondent has referred to the question of military tribunals as a "jurisdictional issue". At times, this term has caused confusion because 18 U.S.C. § 3184 explicitly grants jurisdiction to federal courts in extradition proceedings.[1] The statute, therefore, has resolved the only jurisdictional issue this Court is required to answer. Counsel for respondent, however, has insisted that the extradition action cannot proceed because of the special nature of the charges against the respondent.

Although respondent has nowhere set out his views in a clear and logical progression, this Court interprets the argument he makes to be as follows. Respondent acknowledges that § 3184 enables a United States judicial officer to hear extradition matters. *In Re Extradition of John Demjanjuk*, Transcript of December 17, 1984 Proceedings at 23 [hereinafter referred to as "December Proceeding"]. Respondent

---

1. 18 U.S.C. § 3184 reads in pertinent part: Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jur-

isdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered.

argues, however, that while there is an extradition treaty in force between Israel and the United States, this treaty does not give a United States district court § 3184 jurisdiction in this matter because of the "subject matter" of the extradition. December Proceedings at 17. He contends that in determining jurisdiction, the judicial officer must examine the charge, specifically the type of conduct for which extradition is sought. If the conduct charged is "war crimes or genocide," [2] respondent contends a civilian court lacks jurisdiction.[3] He argues that Article 1 of the United States Constitution gives Congress the exclusive power to regulate the land and naval forces and that Congress has authorized military tribunals to try "war criminals" exclusively. December Proceeding at 23, 21–22, 20. Respondent claims that "a determination has been made historically in this country based on international law and comity, that the rules of land warfare and the punishment of men in uniform will always take place in front of a military tribunal." December Proceeding at 13. Respondent asserts that "a man in uniform" has never been tried by a civilian tribunal in the history of the United States. December Proceeding at 13–14. See also Respondent's Reply to Government's Prehearing Memorandum (May 24, 1984) at 10–13. Thus, respondent concludes that this Court lacks subject matter jurisdiction in this proceeding.

For the reasons set forth below, respondent's arguments and conclusion are erroneous.

## II.

Respondent's interpretation of domestic law, both cases and statutes, is misplaced on at least two grounds. First, this is an extradition proceeding and not a civil or criminal trial on the merits. Second, neither the United States Constitution nor statutes vest exclusive jurisdiction in military tribunals for so-called "war crimes". Each of these conclusions will be examined below.

### A.

No American cases have been reported or found in which a civilian court found that it lacked jurisdiction to preside over an extradition proceeding because the "subject matter" of the extradition charge was alleged "war crimes". In the few reported United States judicial decisions addressing requests to extradite persons for so-called war crimes, courts have not found that they lack jurisdiction to determine extraditability.

In *In re Ryan*, 360 F.Supp. 270 (E.D.N.Y.1973), *aff'd*, 478 F.2d 1397 (2d Cir.1973), the Federal Republic of Germany requested the extradition of a naturalized American citizen, Hermine Braunsteiner Ryan, pursuant to a 1931 treaty. 360 F.Supp. at 272 (United States-Germany Treaty of Extradition, 47 Stat.1862, T.S. 836). The petitioner alleged that Ryan had been a warden at the Lublin concentration camp in Poland during World War II. She was charged with multiple counts of murder in Germany. A United States district court judge exercised jurisdiction pursuant to 18 U.S.C. § 3184 and certified to the Secretary of State that the evidence presented was sufficient to sustain the charges under the Extradition Treaty. Ryan was eventually

**2.** It should be noted that the court does not today find that the alleged conduct respondent is accused of constitutes war crimes or genocide. In fact, the United States government on behalf of the State of Israel has formally charged respondent with murder, manslaughter and malicious wounding. Petitioner's Complaint at 1 (November 18, 1983); December Proceeding at 41–44, 47.

**3.** In addition, respondent alleges that extradition for "war crimes or genocide" does not fall within the U.S.-Israeli extradition treaty and that "had the United States chosen to make extradition for war crimes or genocide the law of the land" it would have done so through ratification of "the genocide convention" and implementing legislation. December Proceeding at 21–22. These arguments are essentially questions of treaty interpretation and will not be addressed at this point. See Order of December 6, 1984 at 1, Appendix.

surrendered to the government of West Germany, where she stood trial and was found guilty of war crimes and sentenced to life imprisonment in June of 1981. *See* Moeller, United States Treatment of Alleged Nazi War Criminals: International Law, Immigration Law and the Need for International Cooperation at 12 (draft manuscript, to be published in 10 *Yale J.Int'l L.* (1985)).

In another case, the extradition of Andrija Artukovic for the crime of "murder" is sought by Yugoslavia. On March 5, 1985, a United States magistrate exercised jurisdiction pursuant to 18 U.S.C. § 3184 and certified that Artukovic is extraditable to Yugoslavia for a murder committed during World War II. *In the Matter of the Extradition of Andrija Artukovic,* CV84–8743 (C.D.Cal. March 5, 1985); *Artukovic v. Boyle,* 107 F.Supp. 11 (S.D.Cal.1952), *rev'd sub. nom., Ivancevic v. Artukovic,* 211 F.2d 565 (9th Cir.1954), *cert. denied,* 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645 (1954), *remanded,* 140 F.Supp. 245 (S.D.Cal.1956), *aff'd sub. nom., Karadzole v. Artukovic,* 247 F.2d 198 (9th Cir.1957), *vacated,* 355 U.S. 393, 78 S.Ct. 381, 2 L.Ed.2d 356 (1958), *remanded sub. nom., United States v. Artukovic,* 170 F.Supp. 383 (S.D.Cal.1959). Extradition proceedings against Artukovic were originally initiated in 1951. Artukovic was accused of ordering the killings of thousands of persons while a high ranking official in a puppet government installed by the Nazi regime which controlled much of prewar Yugoslavia during World War II. Artukovic was found nonextraditable in 1959 because of insufficient evidence and the "political character" of the alleged offenses. Pursuant to Yugoslavia's second extradition request, petitioner United States of America filed a second extradition complaint on November 14, 1984. In the course of these proceedings, none of the federal courts which examined Artukovic's extraditability even questioned whether they could assert jurisdiction in an extradition proceeding because the crimes alleged were war-related. *See also In the Matter of the Requested Extradition of*

*Joseph Patrick Thomas Doherty,* 599 F.Supp. 270, 274 (S.D.N.Y.1984).

**B.**

Neither the United States Constitution nor United States legislation provides that crimes committed by military personnel, crimes which violate the laws of war, or crimes related to the conduct of war must be tried before military authorities. The Supreme Court has characterized as "well-established" the power of military tribunals to exercise jurisdiction over enemy belligerents, prisoners of war and others charged with violating the laws of war. *Johnson v. Eisentrager,* 339 U.S. 763, 786, 70 S.Ct. 936, 947, 94 L.Ed. 1255 (1950). The Supreme Court, however, has never stated or implied that such jurisdiction is exclusive. *See id.* ("the Military Commission is *a* lawful tribunal to adjudge enemy offenses against the laws of war.") (emphasis added).

Article I, Section 8, clause 14 of the United States Constitution grants Congress the power to "make Rules for the Government and Regulation of the land and naval Forces. Article I, section 8, clause 10 gives Congress the power to "define and punish... Offenses against the Law of Nations," of which the law of war is a part. Pursuant to these constitutional provisions, Congress may have the power to vest exclusive jurisdiction over crimes relating to war in military tribunals. This issue, however, need not be reached in the instant case. Congress has not enacted legislation intended to give military authorities exclusive jurisdiction over war-related crimes, let alone over persons accused of murder, manslaughter and causing grievous bodily harm during wartime while at a Nazi concentration camp.

Congress historically has granted military authorities the power to establish military tribunals to try enemy nationals accused of war crimes. Articles of War, 10 U.S.C. §§ 1471–1593 (repealed in part, incorporated in part, 10 U.S.C. §§ 801–835 (1948, 1950). Nonetheless, this jurisdictional grant was not intended to be exclusive.

The Articles of War provided that courts martial would have concurrent jurisdiction with other military tribunals in certain instances. *Accord In re Yamashita* 327 U.S. 1, 7–8, 66 S.Ct. 340, 344–345, 90 L.Ed. 499 (1946). *See also* 10 U.S.C. § 821 (1950). Indeed, during the time the Articles of War were in effect, Congress had authorized federal district courts to try certain war-related offenses. Espionage Act of 1917, 40 Stat. 219 (repealed 1948). *Cf. Ex Parte Quirin* 317 U.S. 1, 27, 63 S.Ct. 1, 10, 87 L.Ed. 3 (1942). *See also Government v. M'Gregory et. al.*, 14 Mass. 499 (1780) (prisoners of war are subject to prosecution for offenses *malum in se;* although they may be tried by courts martial, they may also be tried by courts of general jurisdiction in the country in which the crime is committed).

No United States cases have been found which specifically address civilian court jurisdiction over "war crimes". Nonetheless, courts have examined the related issue of civilian court jurisdiction over American military personnel whom Congress has subjected to the jurisdiction of courts martial. During the Civil War, World War I, and World War II periods, courts have found that civil courts have jurisdiction concurrent with military tribunals. *United States v. Canella*, 63 F.Supp. 377, 381–82 (S.D.Cal.1945). They have held that civilian courts may try a member of the armed forces for an offense which is punishable by a military court, if the civilian court has taken jurisdiction first or if the military consents. 63 F.Supp. at 381. *See also Kennedy v. Sanford*, 166 F.2d 568 (5th Cir.1948), *cert. denied*, 333 U.S. 864, 68 S.Ct. 737, 92 L.Ed. 1143 (1948), (Articles of War provide for concurrent jurisdiction over an American soldier, even during war time; commanding officer has discretion regarding the surrender of a soldier for crimes against federal or state laws); *Scott v. State*, 247 Ala. 62, 22 So.2d 529 (1945) (state court properly asserted jurisdiction over defendant member of the armed forces during time of war for crime of robbery, when military authorities did not request surrender of the accused); *People*

*v. Denman*, 179 Cal. 497, 177 P. 461 (1918) (felony murder charge brought against American soldier who committed crime during time of war properly brought in state court).

The cases cited above clearly illustrate that Congress has not provided nor have courts found that military tribunals or courts martial have exclusive jurisdiction over military matters or crimes related to the conduct of war. The United States government has never surrendered control of civilian affairs to the army, in peace time. *United States v. Canella*, 63 F.Supp. at 383. Americans have historically been very cautious about giving the military powers beyond those that it needs to maintain the security of the United States. *Id.* at 383–84; *Coleman v. Tennessee*, 7 Otto 509, 97 U.S. 509, 24 L.Ed. 1118 (1878).

Israel has charged John Demjanjuk of murdering "tens of thousands" of persons while operating the gas chambers of the Tremblinka death camp. There is no reason why jurisdiction to try John Demjanjuk should be vested exclusively in an American military tribunal. Indeed, no American military tribunal presently exists to try persons accused of "war crimes". Congress certainly did not intend for persons physically present in the United States who are accused of "war crimes" to be able to avoid trial and punishment because no American court had jurisdiction to hear an extradition request. If respondent is found extraditable under 18 U.S.C. § 3184, it would not be consistent with American policy, as reflected in this nation's participation in the Nuremberg trials, to shield him from extradition. *Matter of Doherty*, 599 F.Supp. at 274.

**C.**

Respondent, contending that "military law is regarded as entirely separate" from civilian law, cites several Supreme Court decisions which are inapposite to the instant case. Respondent's Reply to Government's Prehearing Memorandum at 10–13. December Proceeding at 10–14, 15, 17, 19–

22. *In re Yamashita,* 327 U.S. 1, 66 S.Ct. 340, and *Ex parte Quirin,* 317 U.S. 1, 63 S.Ct. 1, both involve habeas corpus proceedings initiated by petitioners tried by military commissions for alleged crimes growing out of their actions during World War Two.[4] In neither case did the Supreme Court address whether a civilian tribunal could have asserted original jurisdiction in these cases. *See also Johnson v. Eisentrager,* 339 U.S. at 786, 70 S.Ct. at 947. In both cases, the Supreme Court found that its scope of review was limited to the authority and jurisdiction of the military commissions. As the Court said in *In re Yamashita,* 327 U.S. at 8, 66 S.Ct. at 344.

We also emphasized in *Ex parte Quirin,* as we do here, that on application for habeas corpus we are not concerned with the guilt or innocence of the petitioners. *We consider here only the lawful power of the commission to try the petitioner for the offense charged.* In the present cases it must be recognized throughout that the military tribunals which Congress has sanctioned by the Articles of War are not courts whose rulings and judgments are made subject to review by this Court. See *Ex parte Vallandigham,* 1 Wall, 243 [17 L.Ed. 589]; *In re Vidal,* 179 U.S. 126 [21 S.Ct. 48, 45 L.Ed. 118]; cf. *Ex parte Quirin,* ... (emphasis added).

The Court held that the detention of General Yamashita and the *Quirin* petitioners for trial and upon conviction, subject to the prescribed review by the military authorities, was lawful. Contrary to respondent's assertions, *see e.g.,* Respondent's Reply to

4. *In re Yamashita* involved the trial of the Commanding General of the Fourteenth Army Group of the Imperial Japanese Army in the Phillipine Islands. 327 U.S. at 5, 66 S.Ct. at 343. *Ex parte Quirin* involved the trial of German spies and saboteurs arrested in the United States for actions during World War II. 327 U.S. at 4, 66 S.Ct. at 343.

5. "International law" develops from a number of sources, including treaties and conventions, international declarations and charters, and the customs and usages of civilized nations. *Cf.*

Government's Prehearing Memorandum, these Supreme Court decisions addressing the appealability of military tribunal decisions do not limit the jurisdiction of this Court to proceed with the instant extradition proceeding.

III.

Respondent's argument that international law provides that trials of military personnel for war crimes will always take place before a military tribunal also lacks merit. International law[5] is a part of the law of the United States to be applied by this Court. *The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900). Respondent, however, has not met his burden of proving his contention that if a civilian court tries him for alleged war crimes, a violation of international law would occur. *Accord id.*

First, the United Nations Convention on the Prevention and Punishment of the Crime of Genocide, 78 U.N.T.S. 277 (*opened for signature* December 9, 1948) was adopted by the United Nations General Assembly in 1948, G.A.Res. 260(A), U.N. Doc. A/810 at 174 (1948) and has been ratified by 93 nations. The Convention defines genocide to include various acts, including killing, committed "with intent to destroy ... a national, ethnical, racial or religious group" and "confirms" that genocide is a punishable crime under international law. Article 6 provides that both national courts and a supranational tribunal, as yet uncreated, have the power to try persons charged with genocide. *See also* G.A.Res. 3074, 28 U.N.GAOR Supp. (No.

Statute of the International Court of Justice Art. 38(1), (San Francisco, June 26, 1945). *See* Akehurst, "The Hierarchy of Sources of International Law" Brit.Y.B.Int'l L. 273, 275–76 (1974–75); Tunkin, "Coexistence and International Law", 3 Recueil des Cours 1, 21 (1958); Schacter, "The Evolving International Law of Development", 15 Colum.J.Transnat'l L. 1, 3 (1976), *Texas Overseas Petroleum et al. v. Libyan Arab Republic* 17 I.L.M. 1 (1978); and *The Paquete Habana,* 175 U. 5. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900).

30) at 78, U.N.Doc. A/9030 (1973) (sets forth principles regarding international co-operation in the extradition and punishment of war criminals, including the right of each state to try its own war criminals). While this Convention may not have a binding effect on nations, such as the United States, which have not ratified it, it does not support respondent's contentions.

Second, at the end of World War II, the wartime Allies agreed to prosecute accused "war criminals" for "atrocities, massacres and executions" which occurred during the war. The "major war criminals" were tried by an International Military Tribunal. The Nurnberg Trial 6 F.R.D. 69 (1946). The agreements reached between the Allies, however, explicitly provided that "national courts" had jurisdiction to try "war criminals." Moscow Declaration of German Atrocities 9 Dep't State Bull. 310 (November 1, 1943) (signed by Roosevelt, Churchill, Stalin); Agreement by the Government of the United States of America, the Provisional Government of the French Republic, the Government of the United Kingdom of Great Britain and North Ireland and the Government of the Union of Soviet Socialist Republics for the Prosecution and Punishment of the Major War Criminals of the European Axis (London Agreement) arts. 4, 6, 59 Stat. 1544, E.A.S. No. 472 (August 8, 1945).[6] Whether the agreements reflect international law at the time of agreement or begin to create a new standard, they indicate that international law does not prohibit the trial of alleged war criminals before national civil tribunals.

Third, the practice of several European nations in the years following World War II also shows that the trial of war criminals by non-military courts is widely accepted in international practice. Since World War Two, a number of European countries have tried alleged perpetrators of various "war crimes" or "crimes against humanity" in their civilian courts. Civilian courts in Norway and Sweden asserted jurisdiction over Nazi war criminals in instances where their own municipal law was violated. *See* Appleman, *Military Tribunals and International Crimes* (1954) at 307. Poland's civilian tribunals also asserted jurisdiction over war criminals. *See id.* at 308. *See also* December Proceeding at 33; Rückerl, *The Investigation of Nazi Crimes 1945–1978* at 31 (1979) (tr. Rutter). Indeed, during the period from 1944 to 1948, the United States extradited over 1,200 alleged Nazi war criminals from the American zones of occupied Germany and Austria to European nations, including Norway, Denmark and Poland. December Proceeding at 33. *See also* 1947 Report of Colonel Streight, U.S. Army, to Judge Advocate General, U.S. Army, at Appendix.

French law currently provides for trying and punishing the perpetrators of both "war crimes" and "crimes against humanity" in civilian courts. A French civilian court, for example, is presiding over the pending prosecution of Klaus Barbie, allegedly a former Gestapo chief. Bolivia expelled Barbie to France in 1983. French prosecutors have charged Barbie with "crimes against humanity" for the part he played in the torture, deportation and murder of several thousand Jews and non-Jews during World War II. *See* Goldberg, "Klaus Barbie and the United States Government", 19 *Harv.C.R.–C.L.L.Rev.* 1 (1984); Moeller, *supra*, at 1.

In addition to trials in the civilian courts of the Allied powers, civil courts in occupied Germany and later in the Federal Republic of Germany have tried thousands of people accused of "war crimes" and crimes against humanity committed during the Nazi era. Appelman, *supra*, at X; Rückerl ..., *supra*, at 32–71; December Proceeding at 35. *See also In re Ryan*, 360

---

**6.** Art. 6 provides: Nothing in this Agreement shall prejudice the jurisdiction or the powers of any national or occupation court established or to be established in any allied territory or in Germany for the trial of war criminals.

F.Supp. 270; *Re Federal Republic of Germany and Rauca,* 141 D.L.R.3d 412, 30 C.R.3d 97, 38 O.R.2d 705 (1982) (extradition by Canada to West Germany of Rauca, to stand trial for war crimes committed during World War II). No evidence has been presented that the "customs and usages of civilized nations", *The Paquete Habana,* 175 U.S. 700, 20 S.Ct. 299, prohibit civilian courts from exercising jurisdiction over war-related crimes.

## IV.

Respondent's arguments have not shown that this Court lacks subject matter jurisdiction to proceed with an extradition hearing in the above captioned case. Clearly, the accused cannot choose the tribunal in which he is to be tried. *See, e.g. People v. Denman,* 177 P. at 502; *State v. Inman,* 224 N.C. 531, 541, 31 S.E.2d 641, 648 (1944).

The State of Israel has requested respondent Ivan Demjanjuk's extradition, pursuant to the 1963 Convention on Extradition between the Government of the United States of America and the Government of the State of Israel. T.I.A.S. 5476, 14 U.S.T. 717. This Court has personal jurisdiction over Respondent. Title 18 U.S.C. § 3184, therefore, imposes a responsibility on this Court to proceed with an extradition hearing forthwith.

Thus, the § 3184 hearing in the instant case shall go forward at 10:00 a.m. on March 12, 1985.

IT IS SO ORDERED.